UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO: 8:24-cv-02720-VMC-SPF

WORLDWIDE AIRCRAFT SERVICES,
INC., d/b/a JET ICU,

      Plaintiff,

v.

AETNA LIFE INSURANCE COMPANY,

      Defendant.

_____/

## **DEFENDANT'S MOTION TO DISMISS COMPLAINT**

Defendant Aetna Life Insurance Company ("Aetna") moves, pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, to dismiss the Complaint of Plaintiff Worldwide Aircraft Services, Inc. for failure to state a claim upon which relief can be granted and to strike Plaintiff's jury trial demand.

## I.    **INTRODUCTION**

This is an action by an air ambulance company related to services provided to an Aetna member on November 28, 2019. *See* Complaint ¶ 6 [ECF 1]. At the time, Aetna's member was covered by an Aetna health insurance plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and Aetna reimbursed Plaintiff pursuant to the ERISA plan's

terms. Dissatisfied with the amount paid, Plaintiff sued Aetna, alleging civil theft, conversion, and quantum meruit.

None of the Complaint's counts are viable, and the Court should grant this Motion for the following reasons:

**First**, all counts are subject to dismissal with prejudice because each is a state-law claim preempted by the Airline Deregulation Act (the "ADA").

**Second**, all counts are subject to dismissal with prejudice because each is a state-law claim preempted by ERISA. Because Plaintiff's claims are, in reality, ERISA claims, Plaintiff's request for a jury trial must also be stricken.

**Third**, none of the three counts sufficiently alleges a claim for relief not barred by the statute of limitations or otherwise under Florida law.

For these reasons, discussed in detail below, the Court should dismiss the action with prejudice.

## II.   FACTUAL BACKGROUND[1]

On November 28, 2019, while in Belize, an Aetna health plan member ("Patient") required emergency medical treatment in the United States, and Plaintiff flew her to Tampa. *See* Complaint ¶¶ 6-9.

Plaintiff and Aetna are not parties to a contractual relationship with one another, therefore, Plaintiff does not participate in Aetna's network of service

---

[1] As required by Rule 12(b)(6), Aetna assumes all well-pleaded Complaint allegations are true for purposes of the instant motion.

providers and is considered "out-of-network." *Id.* at ¶¶ 12-13, 26-27, 52-53. Aetna paid Plaintiff the amount allowed under the member's ERISA-governed plan terms. *Id.* at ¶10. Plaintiff bases this action on Aetna's "partial" payment. *Id.* at ¶ 10.[2]

Nearly five years after the alleged services were rendered, Plaintiff sent Aetna a letter accusing it of theft, making a "Pre-Suit Demand for Treble Damages." *See* Complaint at Exhibit A [ECF 1-1]. According to Plaintiff, Aetna still owes $216,486.01, which is the difference between the amount Plaintiff charged ($232,701) and the amount Aetna paid ($16,214.39). Complaint ¶ 59.

## III.  PROCEDURAL HISTORY

On November 21, 2024, Plaintiff filed its Complaint comprising of three counts: Count One for Theft of Services pursuant to Florida Statute Section 772.11 *et seq.*; Count Two for Conversion pursuant to common law; and Count Three for recovery in Quantum Meruit.

In addition to the allegations cited in the factual background above, the Complaint contains two conclusory allegations that are not entitled to a presumption of truth under Federal Rule of Civil Procedure 12(b)(6). *See Ahanotu v. Bert Bell/Pete Rozelle NFL Player Retirement Plan,* 23-CV-80745, 2024 WL 2061675, at *3 (S.D. Fla. Apr. 2, 2024 (emphasis added). As discussed

---

[2] Of the reimbursed amount, Plaintiff alleges that $930 was for ground ambulance transport and $15,284.39 was for air ambulance transport. Complaint ¶¶ 10, 59.

in detail where pertinent below, Plaintiff asserts in bare-bones conclusory fashion that: (i) the alleged outstanding balance owed is Plaintiff's property (Complaint ¶¶ 60, 64) and, (ii) "[t]his is a dispute over the rate of payment" (Complaint ¶¶ 10, 24, 36, 50, 74). "[B]are-bones conclusory" allegations such as these are "***not*** entitled to a presumption of truth." *See Ahanotu v. Bert Bell/Pete Rozelle NFL Player Retirement Plan,* 23-CV-80745, 2024 WL 2061675, at *3 (S.D. Fla. Apr. 2, 2024) (emphasis added).

## IV.  LEGAL ARGUMENT

### A.  STANDARD OF REVIEW

Rule 12 governs a defendant's response to a complaint and authorizes dismissal where the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, a dispositive legal issue precludes relief. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Masey v. Humana, Inc.,* 806CV1713T24EAJ, 2007 WL 2363077, at *2 (M.D. Fla. Aug. 16, 2007), *report and recommendation adopted in part,* 8:06-CV-1713-T-24EAJ, 2007 WL 2788612 (M.D. Fla. Sept. 24, 2007).

"In evaluating whether Plaintiff has stated a claim, the Court must determine whether the Complaint satisfies Rule 8(a)(2), which requires that a pleading contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wausau Underwriters Ins. Co. v. Econosweep &*

*Maint. Servs., Inc.*, 3:17-CV-723-J-34JBT, 2017 WL 6942651, at *1 (M.D. Fla. Nov. 30, 2017), *report and recommendation adopted*, 3:17-CV-723-J-34JBT, 2018 WL 401179 (M.D. Fla. Jan. 12, 2018); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678-79, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Dismissal for failure to state a claim is appropriate if the facts as pleaded fail to state a claim for relief that is plausible on its face." *Reddy v. Gilbert Med. Transcription Serv., Inc.*, 588 Fed. App'x 902, 903 (11th Cir. 2014) (quoting *Iqbal,* 556 U.S. at 678). A complaint "must contain 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Reddy*, 588 Fed. App'x at 903 (quoting *Iqbal,* 556 U.S. at 678).

Under the governing standard of review, all three counts of Plaintiff's Complaint are due to be dismissed with prejudice.

## B.   THE ADA PREEMPTS EACH COUNT AS STATE-LAW ATTEMPTS TO SET AIR CARRIER PRICES

Courts in this District have already ruled that the ADA preempts Plaintiff's attempts to recover for the very same services alleged by Plaintiff here. *See Worldwide Aircraft Services Inc. v. Conn. Gen. Life Ins. Co.*, 8:24-CV-01604-WFJ-CPT, 2024 WL 4201726, at *6 (M.D. Fla. Sept. 16, 2024) (ruling ADA preempted Plaintiff's state-law claims of civil theft and quantum meruit); *Worldwide Aircraft Services, Inc. v. United Healthcare Ins. Co.*, 8:18-CV-2549-

TGW, 2018 WL 6589838, at *3 (M.D. Fla Dec. 14, 2018) (ruling ADA preempted Plaintiff's state-law claim of unjust enrichment).

Congress enacted the ADA in 1978 to "promote 'efficiency, innovation, and low prices' in the airline industry through 'maximum reliance on competitive market forces and on actual and potential competition.'" *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 280 (2014) (quoting 49 U.S.C. §§ 40101(a)(6), (12)(A)). To prevent states from undoing the federal deregulation, the ADA expressly prohibits states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation. . ." *Id.* (quoting 49 U.S.C. § 41713(b)(1)). Thus, any state laws having a connection with or reference to airline "price, rates, routes, or services" are preempted. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). The Supreme Court requires courts to interpret the ADA's preemption provision broadly. *Id.* at 383 (finding ADA's language expresses "broad preemptive purpose"); *Ginsberg*, 572 U.S. at 281 (reaffirming *Morales*' broad interpretation). Thus, this Court must interpret the ADA's preemption provision broadly, encompassing "state enforcement actions having a connection with or reference to airline 'rates, routes, or services.'" *Morales*, 504 U.S. at 384 (quoting 49 U.S.C. § 1305(a)(1)).

The ADA preempts all three counts because Plaintiff is an "air carrier" for ADA purposes and each count seeks to enforce a state law that, as pleaded, is related to a price of an air carrier. *See Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1266 n.13 (11th Cir. 2018); *Worldwide v. United Healthcare*, 2018 WL 6589838, at *2; *Stout v. Med-Trans Corp.*, 313 F. Supp. 3d 1289, 1295 (N.D. Fla. 2018); *Reva, Inc. v. Humana Health Benefit Plan of Louisiana, Inc.,* No. 18-20136-CIV, 2018 WL 1701969, at *5-7 (S.D. Fla. March 19, 2018).

1. <u>**Plaintiff is an "air carrier" for ADA purposes**</u>

As a threshold matter, courts in the Middle District of Florida have already found that Plaintiff is an "air carrier" subject to the ADA. *See Worldwide Aircraft Services, Inc., v. Conn. Gen. Life Ins. Co.*, M.D. Fla. Case No. 8:24-cv-01604-WFJ-CPT Slip Opinion Sept. 16, 2024, at p. 8. This Court should follow the findings and conclusions already made in this regard.

In any event, there is no argument to be made that Plaintiff is not an "air carrier" for ADA purposes. The ADA defines an "air carrier" as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2). "Air transportation" is defined as "foreign air transportation, interstate air transportation, or the transportation of mail by aircraft." 49 U.S.C. § 40102(a)(5).

Plaintiff admits in its Complaint that it "provides air transport . . . via fixed-wing aircraft" and was engaged in that activity in providing the services sued for. Complaint ¶¶ 2, 7-9, 18, 44, 47-49, 69, 71-73. In other words, Plaintiff "directly" provided "interstate air transportation" when the Patient was flown from Belize to Tampa for medical treatment. *See* 49 U.S.C. § 40102(a)(2), (5). Air ambulances transporting patients to hospitals "fall squarely within that definition." *See, e.g., Air Evac EMS, Inc. v. Sullivan*, 8 F.4th 346, 352 (5th Cir. 2021); *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 766 (4th Cir. 2018) ("[T]he ADA's preemption clause applies to the air ambulance industry."); *Schneberger v. Air Evac EMS, Inc.*, No. CIV-16-843-R, 2017 WL 1026012, at *2 (W.D. Okla. Mar. 15, 2017); *see also Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1266 n.13 (11th Cir. 2018); *Eaglemed Ltd. Liab. Co. v. Cox*, 868 F.3d 893, 904 (10th Cir. 2017); *Worldwide v. United Healthcare*, 2018 WL 6589838, at *2; *Stout v. Med-Trans Corp.*, 313 F. Supp. 3d 1289, 1295 (N.D. Fla. 2018); *Reva*, 2018 WL 1701969, at *5; *Med-Trans Corp. v. Benton*, 581 F.Supp.2d 721, 732 (E.D.N.C. 2008).

## 2. Plaintiff's civil theft count is related to a price of an air carrier for ADA purposes

Since Plaintiff is an "air carrier" under the ADA, Count One is preempted because the state law sued upon — Florida Statute § 772.11(1) — is "related to a price . . . of an air carrier." 49 U.S.C. § 41713(b)(1). A law "relate[s] to a price,

8

route, or service" if it has "a connection with, or reference to" an air carrier's prices, routes, or services. *See Ginsberg*, 572 U.S. at 280 (citing *Morales*, 504 U.S. at 384). Because the phrase "related to" expresses a "broad pre-emptive purpose," "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are preempted" under the ADA. *Morales*, 504 U.S. at 383–84. Therefore, "[w]henever a state law has 'the forbidden significant effect' on the prices of an air carrier, the ADA preempts that law." *Bailey*, 889 F.3d at 1262 (quoting *Morales*, 504 U.S. at 388).

Plaintiff is attempting to use a state enforcement action (*i.e.*, Florida's civil theft statute) to dictate the reimbursement amount an air ambulance provider can receive. Florida Statute § 772.11(1) states in relevant part:

> Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts.

Fla. Stat. § 772.11(1) (emphasis added). To the extent that Florida Statute § 772.11(1) applies in this case, it is preempted because it directly increases the price that an insurer must pay for Plaintiff's air ambulance service. *See Worldwide v. Conn. Gen.*, 2024 WL 4201726, at *4 (dismissing air ambulance civil theft claim because FAA preempts § 772.11(1)); *see also Worldwide v.*

*United Healthcare*, 2018 WL 6589838, at *6 (holding § 641.513(5) was preempted "because it directly specifies the price that an HMO insurer must pay for the plaintiff's air ambulance services").

Put another way, Florida Statute § 772.11(1) has a connection with or reference to Plaintiff's price since it affects the reimbursement amount Plaintiff can receive for air transportation. Indeed, Florida Statute § 772.11(1) would allow Plaintiff to receive "threefold the actual damages sustained" (in addition to reasonable attorney's fees and court costs) if it prevailed in its civil theft suit. Fla. Stat.§ 772.11(1). In doing so, the statute multiplies the amount Plaintiff could obtain from an insurer for services it provides to a patient. Such an expansion—even if it benefits Plaintiff by increasing the amount it could be reimbursed—has a "forbidden significant effect" on Plaintiff's price. *See Bailey*, 889 F.3d at 1271 (holding ADA preempted § 627.736 due to its "forbidden significant effect" on prices of air ambulance); *Air Evac EMS, Inc. v. Sullivan*, 331 F. Supp. 3d 650, 662–63 (W.D. Tex. 2018) (finding workers compensation statute preempted by ADA because it restricted amount air ambulance could receive).

Accordingly, the Court must find that ADA preemption "clearly appears on the face of the complaint" and preempts Florida Statute § 772.11(1) from being used by Plaintiff to obtain reimbursement from Aetna. *Quiller*, 727 F.2d

at 1069 (citations omitted). Because no such claim is amenable to cure, Count One must be dismissed with prejudice.

### 3. Plaintiff's conversion count is related to a price of an air carrier for ADA purposes

The ADA also preempts Count Two, wherein Plaintiff seeks to recover the balance of its billed charges under a common law theory of conversion. Since Plaintiff is an "air carrier" under the ADA, Count Two is preempted if the state law sued, upon—Florida's common law of conversion—is "related to a price . . . of an air carrier." 49 U.S.C. § 41713(b)(1). Again, a law "relate[s] to a price, route, or service" if it has "a connection with, or reference to" an air carrier's prices, routes, or services, terminology which must be ready broadly, resulting in preemption where there is "significant effect." *Morales*, *supra*; *Ginsberg*, *supra*; *Bailey*, *supra*.

Preemption applies to common law claims just as it applies to statutory actions because common law theories of recovery "hav[e] the force and effect of law," just as statutes and regulations do. *Ginsberg*, 572 U.S. at 281-82, 286 (implied covenant of good faith and fair dealing preempted). Consequently, the ADA preempts Plaintiff's conversion claim if it arises not from privately ordered obligation but from one that is state-imposed. As a tort, common law conversion is a state-imposed obligation that cannot stand in the face of the

11

2958349eb8d9cdfc

ADA. *Golden Hawk Metallurgical, Inc. v. Fed. Express Corp.*, 15-14005, 2016
WL 5791198, at *2 (E.D. Mich Oct. 4, 2016) (dismissing conversion claim).

The Court must dismiss Count Two with prejudice as preempted.

### 4.     Plaintiff's quantum meruit count is related to a price of an air carrier for ADA purposes

The ADA also preempts Count Three, in which Plaintiff seeks to recover
a higher price under a common law theory of quantum meruit. *See Reva,* 2018
WL 1701969, at *7 (dismissing air ambulance's quantum meruit claim as ADA-
preempted); *Stout*, 313 F. Supp. 3d at 1298 (finding that the ADA preempted
plaintiffs' claim for breach of an implied-in-fact contract).

The ADA preempts Plaintiff's quantum meruit count because the law's
implying of a contract constitutes a state-imposed obligation. *See Stout*, 313 F.
Supp. 3d at 1298. Indeed, courts have been unanimous in finding preemption
of claims that, like Plaintiff's, ask the Court to imply obligations as a matter of
law. *See, e.g., Byler v. Air Methods Corp.*, 823 F. App'x 356, 364 (6th Cir. 2020);
*Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1065 (10th Cir. 2019); *Brown v.
United Airlines, Inc.*, 720 F.3d 60, 69–71 (1st Cir. 2013); *Reva*, 2018 WL
1701969, at *6; *Worldwide*, 2018 WL 6589838, at *5; *Med. Mut. of Ohio*, 341 F.
Supp. 3d at 781.

The Court should not confuse Plaintiff's Complaint with the kind of
contract-based actions that have authorized some courts to reject ADA

preemption; that somewhat controversial exception to preemption depends on facts establishing mutual and voluntary assent to terms, which is not present here. "[A]n air carrier may bring a state action to enforce the terms of a contract, whether express or implied . . . so long as the action concerns **voluntary commitments** and not state-imposed obligations." *Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1268 (11th Cir. 2018) (citing *American Airlines v. Wolens*, 513 U.S. 219, 232-33 (1995); *see also Reva,* 2018 WL 1701969, at *2 (stating that, "[a]fter *Ginsberg*, it is clear the ADA preempts state law claims that seek to establish the price for an air carrier's services **other than** claims to enforce an **express** contract to which the air carrier is a party") (citing *Ginsberg*, 572 U.S. at 283).

Because the exception applies only to a claim for "court enforcement of contract terms **set by the parties themselves,**" it does not apply here, where the Complaint establishes the complete absence of a contractual relationship between the parties due to both parties' refusal to agree to an essential contract term—each other's price. Plaintiff affirmatively alleges that Plaintiff and Aetna are not parties to a contractual relationship with one another. *See* Complaint ¶¶ 12-13, 26-27, 52-53. Plaintiff insists there was no "pre-negotiated contract with Aetna," and Plaintiff had not joined Aetna's "provider network." *Id.* at ¶¶ 12-13, 26-27, 52-53, 77. Plaintiff knew there was no agreement, and also knew that Aetna knew there was no agreement. *Id.* at ¶¶ 27, 53, 77.  Nor

13

could there be any agreement under the circumstances because Plaintiff admits that it provided these services on an emergency basis at the request of the Patient's then treating physician with no prior notice to, or agreement with, Aetna. *Id.* ¶¶ 7-8. Plaintiff's price was set ***unilaterally***, based on various factors, including Plaintiff's opinion regarding "usual, customary, and reasonable charges" for the services it provides. *Id.* at ¶¶ 9, 23, 27. Plaintiff's unilateral setting of a price to which Aetna has never agreed completely defeats any quasi-contractual claim because price is an essential term without which a contract cannot be formed. *See Vanguard Plastic Surgery, PLLC v. Aetna Life Ins. Co.*, 0:22-CV-61853-WPD, 2023 WL 3171963, at *5 (S.D. Fla Mar. 27, 2023) (dismissing service provider's quasi-contractual claims against insurer because provider failed to allege "any meeting of the minds as to the definite terms and conditions, *i.e.*, that Aetna agreed to pay [the provider] at specific rates" and in fact alleged that the parties never agreed on a set rate"); *see also Cavallaro v. Stratford Homes, Inc.*, 784 So. 2d 619, 621 (Fla. 5th DCA 2001) (affirming summary judgment because meeting of minds was never reached as to essential terms such as ***price***); *Jacksonville Port Auth., City of Jacksonville v. W.R. Johnson Enters., Inc.*, 624 So. 2d 313, 315 (Fla. 1st DCA 1993) (holding that, where parties were continuing to negotiate essential terms, including ***price***, there could be no "meeting of the minds" and no contract).

Because Plaintiff is not relying on an express contract or a "privately ordered obligation" that Plaintiff and Aetna "voluntarily undertook," it has pleaded itself into the field preempted by the ADA and out of any exception to preemption. *Ginsberg*, 572 U.S. at 281.

The Court must dismiss all of Plaintiff's state-law claims with prejudice due to their preemption by the ADA.

## C.   ERISA PREEMPTS EACH OF THE COMPLAINT'S COUNTS, WHICH CONSTITUTE ATTEMPTS TO RECOVER FEDERALLY REGULATED EMPLOYEE BENEFITS UTILIZING STATE LAW

ERISA preempts all three counts of Plaintiff's Complaint, which is to say that: (i) Plaintiff is seeking payments that are due, if at all, **only** because an employee benefit plan requires the payments to be made; and (ii) federal law requires that all civil suits to recover such benefits must be brought pursuant to the civil enforcement provisions of ERISA, precluding them under state law.

Plaintiff is "a health care provider" seeking to recover for "air ambulance services" it allegedly provided to a "Patient." Complaint ¶¶ 2, 33, 59, 85. Although Plaintiff's services were rendered to a "***Patient***," Plaintiff is not suing any Patient who actually received its services; Plaintiff is suing Aetna as the administrator of the Patient's health insurance plan. Complaint ¶¶ 34, 82, 86. Plaintiff admits that Plaintiff does not have a contract with Aetna and is outside of Aetna's "network." *Id.* at ¶¶ 12-13, 26-27, 52-53, 76-77. Yet, Plaintiff  billed Aetna for services it allegedly rendered to the Patient. *Id.* at

¶¶ 59, 85. The only possible way for Plaintiff to call on Aetna—a third party to the transaction sued upon—is to identify an obligation on Aetna's part to the Patient who actually received the services. To that end, Plaintiff asserts Aetna's "insurance" obligation to "reimburse" the Patient for certain health care services. *Id.* at ¶¶ 6, 20, 36, 46, 70, 87. Plaintiff does not identify any other legal duty owed by Aetna to pay for services sued upon. *See generally* Complaint.

Because the policy is the only tether connecting Aetna to the events at issue in the Complaint, it is essential to any understanding of the claims asserted by Plaintiff. *See Small*, 2024 WL 482802, at *13. As such, the policy is appropriately reviewed in the Court's consideration of the Complaint under Rule 12(b)(6). *Id.* Although the mere existence of an ERISA plan in the background does not result in preemption, preemption occurs here ***because the reimbursement benefits allegedly owed on the Patient's behalf are premised on the plan***. *Small*, 2024 WL 482802 at *13.

As Plaintiff cannot point to any basis for naming Aetna other than the policy, this case differs from those in which health care providers have sometimes avoided ERISA. Those cases generally involved: (i) "alleged agreements ***separate*** from ERISA plans;" or (ii) "alleged fraud, misrepresentations, or omissions." *See Small,* 2024 WL 482802 at *13. The Middle District of Florida has cogently harmonized these seemingly

contradictory authorities. *See Small*. 2024 WL 482802, at *13 (discussing caselaw development).

In an attempt to avoid ERISA, as some providers have, Plaintiff asserts that "[t]his is a dispute over the rate of payment." Complaint ¶¶ 10, 24, 36, 50, 74. Contrary to Plaintiff's conclusory allegation, a rate-of-payment dispute can arise only where a provider alleges a plan administrator underpaid in violation of the terms of a ***provider agreement*** entered into directly between that provider and a plan. *See Lone Star OB/GYN Assoc. v. Aetna Health Inc.*, 579 F.3d 525, 529-531 (5th Cir. 2009) (coining "rate of payment" and "right of payment" terminology to explain distinction drawn by majority of federal courts between provider-insurer disputes that skirt ERISA and those ERISA preempts); *accord Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1349-50 (11th Cir. 2009); *Sarasota County Pub. Hosp. Bd. v. Blue Cross and Blue Shield of Florida, Inc.*, 8:18-CV-2873, 2020 WL 5898978, at *5-6 (M.D. Fla Apr. 7, 2020). "A claim that implicates the ***rate*** of payment as set out in the ***Provider Agreement***, rather than the ***right*** to payment under the terms of the benefit plan . . .  is not preempted by ERISA." *Lone Star OB/GYN*, 579 F.3d at 529-531 (emphasis in original).

Thus, because an employee benefit plan is the ***only*** possible source of a duty of reimbursement owed by Aetna, Plaintiff's only possible cause of action for that reimbursement is one for civil enforcement of the plan's provisions

pursuant to ERISA. *See id.* Congress intended for federal law to occupy the field of employee plan obligation enforcement and, thus, ERISA preempts state laws that would play that role, including in creatively pleaded lawsuits.

Accordingly, all three of Plaintiff's state-law counts are preempted by ERISA and must be dismissed with prejudice.

## D. NONE OF THE COMPLAINT'S COUNTS SUFFICIENTLY STATES A CLAIM FOR RELIEF THAT IS NOT BARRED BY FLORIDA LAW

### 1. The civil theft and conversion counts fail for lack of a sufficient possessory right on the part of Plaintiff and lack of criminal intent on the part of Aetna

Civil theft and conversion require Plaintiff to allege "facts showing" its "possession or an immediate right to possession of the converted property at the time of the conversion" as well as wrongful intent. *Peng v. Mastroianni*, 20-80102-CIV, 2020 WL 11564646, at \*4 (S.D. Fla. Oct. 26, 2020), amended on reconsideration in part, 20-80102-CIV, 2021 WL 9940408 (S.D. Fla. Jan. 14, 2021) (citations omitted). Statutory civil theft "requires an additional element of ***criminal intent***." *Peng*, 2020 WL 11564646 at \*4 (emphasis added); *see also Anthony Distributors, Inc. v. Miller Brewing Co.*, 941 F. Supp. 1567, 1575 (M.D. Fla. 1996) (a claim for civil theft requires showing "***felonious intent to steal*** on the part of the defendant" in addition to "a legally recognized property interest in the items stolen") (emphasis added).

Plaintiff has failed to plausibly allege facts showing an ***immediate***

***right*** to the additional payment it seeks, much less ***criminal*** intent on the part of Aetna. Plaintiff, itself, characterizes this as a dispute over the rate of payment. Complaint ¶¶ 10, 24, 36, 50, 74. These allegations reflect a disagreement regarding the nature and extent of Plaintiff's rights, not a willful disregard of clear rights.

Plaintiff does not show that the additional payment it seeks constitutes its own "property." *Indus. Park Dev. Corp. v. Am. Exp. Bank, FSB*, 960 F. Supp. 2d 1363, 1366 (M.D. Fla. 2013) (requiring "facts sufficient to show ownership of the subject property"). Although Plaintiff alleges that the difference between the amounts charged and paid "***belong[s]***" to Plaintiff, that is a conclusory allegation not containing any facts from which this Court could find a legally cognizable property right in the demanded amount. *See* Complaint ¶¶ 59-64. Parroting statutory language may be necessary but, without more, it is the mere drawing of conclusions. Plaintiff does not satisfy Rule 8 by labeling the difference between the billed amount and the paid amount as "JET ICU's money" or by stating baldly that Aetna "has and continues to deprive [Plaintiff]" of that amount. *Id.* at ¶¶ 59-64.

Likewise, Plaintiff negates the requisite intent by admitting the amount is in dispute, *i.e.*, regarding the appropriate "rate." *Id.* at ¶¶ 10, 15, 29, 36, 50, 55, 74, 79. Plaintiff does not, by complaining that an outstanding balance is in Aetna's "possession" without Plaintiff's "consent," allege any

facts about Aetna's state of mind; it does not allege an intent to deprive, much less the ***felonious*** intent necessary under the ***criminal*** statutes on which civil theft remedies depend. The civil theft statute is part of the Civil Remedies for ***Criminal*** Practices Act. Civil theft requires an "***intent to steal***." *World Cellphones Distributors Corp. v. De Surinaamsche Bank, N.V.*, 357 So. 3d 225, 230 (Fla. 3d DCA 2023) (statutory claim is "essentially . . . conversion plus ***criminal intent***." *Id.*) (emphasis added); *see also Lewis v. Heartsong, Inc.*, 559 So. 2d 453, 454 (Fla. 1st DCA 1990) ("felonious intent to steal" is "necessary element" for civil damages based on criminal violation).

Although the general rule is that intent may be pleaded generally, Florida Statute § 812.014 requires ***specific*** intent. *See* Fla. Stat. § 812.014(1) ("A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently . . . [d]eprive the other person of a right to the property or a benefit from the property" or "[a]ppropriate the property to his or her own use or to the use of any person not entitled to the use of the property."). Thus, to establish a violation, "a plaintiff must show that the defendant knowingly obtained or used the plaintiff's property with the felonious intent to appropriate the property to the defendant's own use or the use of any person not entitled to the use of the property." *World Cellphones*, 357 So. 3d at 230.

20

Here, the Complaint shows the opposite by alleging that this is "a dispute over the rate of payment." Complaint ¶¶ 10, 15, 29, 36, 50, 55, 74, 79.

The Court should, therefore, dismiss Count One for civil theft and Count Two for conversion due to Plaintiff's failure to set forth the minimal facts necessary to plausibly plead a claim for relief.

### 2. Plaintiff cannot make out the elements of the quantum meruit claim attempted in Count Three

Plaintiff's quantum meruit claim is so vague that it is impossible to even discern what legal theory Plaintiff is relying on. *See Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 387 (Fla. 4th DCA 1997), as modified on clarification (June 4, 1997) (discussing various meanings of the term "quantum meruit"). Regardless of which theory Plaintiff intends to rely on, Plaintiff fails to allege facts showing entitlement to relief. Count Three is replete with vague, conclusory allegations which fall short of the ordinary pleading requirements. Florida law has established that a plaintiff asking a court to imply an obligation faces an even more demanding task in adequately stating a claim because "[t]he law should place a tougher burden on a plaintiff who relies on an implied contract than it does on one 'who uses reasonable care and foresight in protecting himself by means of an express contract.'" *W.R. Townsend Contr., Inc. v. Jensen Civ. Constr., Inc.*, 728 So. 2d 297, 305 (Fla. 1st DCA 1999).

Moreover, the facts Plaintiff does offer show, instead, a preexisting legal duty to the Patient and, at most, an ***indirect*** benefit to Aetna. *See Slattery v. Wells Fargo Armored Serv. Corp.*, 366 So. 2d 157, 159 (Fla. 3d DCA 1979) ("The performance of a pre-existing duty does not amount to the consideration necessary to support a contract."); *F.H. Paschen, S.N. Nielsen & Assocs. LLC v. B&B Site Dev., Inc.*, 311 So. 3d 39, 48 (Fla. 4th DCA 2021) (requiring showing of direct benefit).

A pre-existing legal duty will not support quantum meruit because "[t]he performance of a pre-existing duty does not amount to the consideration necessary to support a contract." *See Slattery v. Wells Fargo Armored Serv. Corp.*, 366 So. 2d 157, 159 (Fla. 3d DCA 1979) (citing *Brinson v. Herlong*, 121 Fla. 505 (1935))); *Vanguard Plastic Surgery PLLC v. Blue Cross & Blue Shield of Fla., Inc.*, No. CACE-19-020810 (Fla. 17th Cir. Ct.) ("[T]he performance of a preexisting duty does not constitute consideration necessary to support a valid contract.") (citing *Ashby v. Ashby*, 651 So. 2d 246, 247 (Fla. 4th DCA 1995)).

Quantum meruit requires showing a ***direct*** benefit to Aetna as opposed to a benefit conferred on a third party, the Patient. *See F.H. Paschen, S.N. Nielsen & Assocs. LLC v. B&B Site Dev., Inc.*, 311 So. 3d 39, 48 (Fla. 4th DCA 2021); *see also Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, No. 13-21895, 2013 WL 3810617, at *3 (S.D. Fla. July 22, 2013) ("Under Florida

law, claims for quantum meruit . . . provide relief based upon the theory that the party seeking relief conferred a benefit on the defendant . . . .").

### 3.    Count Two and Three also fail because the statute of limitations has expired

Both conversion and quantum meruit are subject to a four-year statute of limitations. The quantum meruit claim alleged in Count Three is an "equitable action" brought on an "obligation [or] liability not founded on a written instrument" and, therefore, was required to be commenced "WITHIN FOUR YEARS." *See* Fla. Stat. § 95.11(3)(j). Conversion, likewise, is subject to a four-year limitations period as "[a]n action for taking, detaining, or injuring personal property." Fla. Stat. §95.11(g).

Plaintiff's claim for quantum meruit accrued on November 28, 2019, when it provided services to the Patient (Complaint ¶ 6), and its claim for conversion occurred immediately thereafter, when Aetna allegedly exercised dominion over Plaintiff's alleged "property" (*i.e.*, the amounts owed for Plaintiff's services) (Complaint ¶¶ 60, 64). *See Ducat Florida, LP v. Wells Fargo Bank, N.A.*, 12-23683-CIV, 2013 WL 6667038, at *4 (S.D. Fla. Oct. 24, 2013), report and recommendation adopted in part, 12-23683-CIV, 2013 WL 6667033 (S.D. Fla. Dec. 17, 2013), and report and recommendation adopted in part, 12-23683-CIV, 2014 WL 11878362 (S.D. Fla. Jan. 13, 2014) ("Under Florida law,

a cause of action accrues, for statute of limitations purposes, when the last element constituting the cause of action occurs.

As to the tort of conversion, that act constitutes the exercise of wrongful dominion and control over the property to the detriment of the rights of its actual owner. *Merle Wood & Assoc., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013) (holding quantum meruit plaintiff conferred benefit on defendant "and thus triggered the statute of limitations" when plaintiff performed act sued upon); *Flatirons Bank v. Alan W. Steinberg Ltd. P'ship*, 233 So. 3d 1207, 1213 (Fla. 3d DCA 2017).

Because the four-year statute began to run for quantum meruit when Plaintiff provided services to the Patient on November 28, 2019, and for conversion immediately afterward, i.e., when Aetna allegedly received Plaintiff's property in the form of the amount owed, Plaintiff's deadline to bring Count Three was November 28, 2023, and its deadline for Count Two was immediately thereafter. Plaintiff did not file the Complaint until November 21, 2024, which was nearly a year past both deadlines. Accordingly, both of these counts are time-barred.

The Court must, therefore, dismiss Count Two for conversion and Count Three for quantum meruit with prejudice due to the expiration of the statutory limitations period applicable to both.

## **CONCLUSION**

For the foregoing reasons, Aetna respectfully requests this Court dismiss Plaintiff's Complaint in its entirety *with prejudice*, and grant such other relief in favor of Aetna as the Court deems just and proper.

## **Local Rule 3.01(g) Certification**

In compliance with Local Rule 3.01(g), Emilia A. Quesada, Esq., counsel for Aetna, certifies that she conferred with Michael Brannigan, Esq., counsel for Plaintiff, by telephone on January 14, 2025, who advised that Plaintiff opposes this Motion.

Dated: February 24, 2025

Respectfully submitted,

/s/   Emilia A. Quesada
Emilia A. Quesada, Esq.
*Lead Counsel*
Florida Bar No. 092045
*equesada@smgqlaw.com*
Sanchez-Medina, Gonzalez, Quesada, et al.
201 Alhambra Circle, Suite 1205
Miami, Florida 33134
Office:        (305) 377-1000
Facsimile:  (855) 898-1359
   *Counsel for Defendant Aetna*